[Sac. No. 7340.   In Bank.   Mar. 15, 1962.]

ELSIE WOOLEN et al., Plaintiffs and Respondents, v. AEROJET GENERAL CORPORATION, Defendant and Appellant.

Wm. A. Sitton and Johnson, Davies & Greve for Defendant and Appellant.

Desmond & Miller, Melvin & Desmond, Hugh F. Melvin, Jr., and E. Vayne Miller for Plaintiffs and Respondents.

GIBSON, C. J.—Otto Woolen, an employee of an independent contractor, D. Zelinsky and Sons, was killed by an explosion while painting a tank owned by defendant corporation. His wife and children brought this action to recover damages for his wrongful death, and the jury found in their favor. Defendant has appealed from the ensuing judgment and the denial of its motion for judgment notwithstanding the verdict.

Defendant entered into a contract with Zelinsky, which specified that Zelinsky would paint the inner surface of defendant's tank with a product called "Amercoat 23" and would furnish all labor, material, and equipment. There was no provision in the contract for the taking of precautions

by Zelinsky in doing the work, and defendant did not supply a fan for circulation of air in the tank, or any safety equipment, and did not give Zelinsky information or instructions concerning precautions to be taken.

The tank was 30 feet in diameter and 24 feet high and was equipped with a lid. There was an opening in the side, measuring about 2 feet by 3 feet, through which the painters entered and left. The explosion occurred while Woolen and another painter employed by Zelinsky were in the tank applying Amercoat 23. No fan for the circulation of air in the tank was used, and the equipment which had been supplied by Zelinsky, including the electric lighting equipment, was not "explosion-proof." As far as appears defendant did not give orders to Zelinsky's employees or otherwise assume to direct the painting of the tank, and Zelinsky was in full control of the operative details of the work.

Amercoat 23 contains volatile and inflammable solvents which vaporize and mix with air when the paint is applied, and, being heavier than air, the mixture floats downward. When the paint is used in a confined space such as defendant's tank, a continuous supply of fresh air must be provided or an explosive concentration of vapors will be formed which can be ignited in various ways, including sparks from electric lighting equipment. An expert testified that air circulation is the "best and only truly complete precaution." A circular published by the manufacturer of Amercoat 23 stated in part that in using the paint an exhaust fan of sufficient capacity to keep the fumes below 1 per cent by volume of air should be provided if the painting is to be done in a closely confined area, that air circulation must be maintained continuously during application and drying of the paint, and that explosion-proof equipment should be used. The label on cans of Amercoat 23 stated in part, "WARNING: The solvents in this coating are volatile and inflammable. . . . In closely confined areas, adequate continuous circulation of fresh air must be provided during application and drying . . .; explosion-proof equipment should be used."

Amercoat 23 had previously been used by defendant several times at its plant. About a week prior to the explosion defendant supervised the painting of a pit inside one of its buildings with Amercoat 23 pursuant to an agreement providing for defendant to furnish all the equipment and material, including paint, and for a painting contractor to supply the men to do the work. Defendant furnished "explosion-proof"

lights, a blower to eliminate the fumes, and a fireman and a fire truck. Defendant's representative inspected the work on that job while it was in progress.

An engineer of defendant, who was in charge of the department that supervised the painting of the tank involved in the accident, testified that before the work was commenced an employee in his department had obtained the manufacturer's circular referred to above and that the product had been tested at defendant's plant. The engineer stated further that although at the time of the accident he was not familiar in detail with the properties of Amercoat 23, he was aware that it would form combustible vapors, that an explosion could result in the event of a sufficient concentration of such vapors, and that where such vapors were present in a confined space ventilation should be provided. There was uncontroverted testimony, including that of a safety engineer of defendant, that the explosion would not have occurred if an adequate fan for the circulation of air had been used.

Two employees of Zelinsky who did some of the painting in the tank prior to the accident testified that they did not know there was a danger of explosion from the use of Amercoat 23. A business representative of the painters' union, who had been a painter for many years, testified to the same effect.

The evidence is sufficient to support the judgment. ▮ The applicable rule is set forth in section 413 of the Restatement of Torts as follows: ''One who employs an independent contractor to do work which the employer should recognize as necessarily creating, during its progress, conditions containing an unreasonable risk of bodily harm to others unless special precautions are taken, is subject to liability for bodily harm caused to them by the absence of such precautions, if the employer (a) fails to provide in the contract that the contractor shall take such precautions (as to which see § 416), or (b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions.'' This is the law in California. (*Courtell* v. *McEachen,* 51 Cal.2d 448, 456 [334 P.2d 870].)

We have held that employees of an independent contractor come within the word ''others'' in sections 414 and 428 of the Restatement of Torts which, like section 413, set forth rules relating to the liability of one hiring an independent contractor (*Austin* v. *Riverside Portland Cement Co.* (1955) 44 Cal.2d 225, 232-234 [282 P.2d 69]; *Snyder* v. *Southern Cal. Edison Co.* (1955) 44 Cal.2d 793, 798 et seq. [285 P.2d

912]). There is no reason to hold otherwise with respect to section 413. The liability imposed upon one who hires an independent contractor to do dangerous work has been extended to the employees of the contractor in other jurisdictions (e.g., *Mallory* v. *Louisiana Pure Ice & Supply Co.*, 320 Mo. 95 [6 S.W.2d 617, 623-627] ; *International Harvester Co.* v. *Sartain*, 32 Tenn.App. 425 [222 S.W.2d 854, 865-868] ; see 23 A.L.R. 1084, 1129-1135).

*Bedford* v. *Bechtel Corp.* (1959) 172 Cal.App.2d 401, 414 [342 P.2d 495], contains a statement, unnecessary to the decision, that the word ''others'' as used in sections 414 and 416 of the Restatement of Torts does not include employees of an independent contractor. However, the court in *Bedford* failed to consider *Austin* v. *Riverside Portland Cement Co.*, *supra*, 44 Cal.2d 225, and *Snyder* v. *Southern Cal. Edison Co.*, *supra*, 44 Cal.2d 793, and relied instead on three decisions from other jurisdictions, one of which (*Salmon* v. *Kansas City*, 241 Mo. 14 [145 S.W. 16, 39 L.R.A. N.S. 328]) has in effect been overruled so far as the problem before us is concerned (*Mallory* v. *Louisiana Pure Ice & Supply Co.*, 320 Mo. 95 [6 S.W.2d 617, 625-627]). The statement made in *Bedford* v. *Bechtel Corp.*, 172 Cal.App.2d 401, 414 [342 P.2d 495], is disapproved.

*McDonald* v. *Shell Oil Co.*, 44 Cal.2d 785, 788-791 [285 P.2d 902], relied on by defendant, does not hold that the rule in question is inapplicable to employees of an independent contractor. That decision, in affirming a judgment against the plaintiff, distinguishes various situations in which an owner has been held liable to employees of an independent contractor, but the opinion does not state that the situations referred to are the only ones in which liability may be imposed, and the rule under consideration here is not mentioned.

The trial court properly denied the motion for judgment in defendant's favor notwithstanding the verdict for plaintiffs. The question remains whether certain instructions given by the court were prejudicially erroneous.

The jury was instructed that if defendant was an invitor of Woolen, it had the duty to make reasonable inspections to see that the tank remained a reasonably safe place for him to work. This instruction, in making a duty to inspect mandatory without qualification, failed to take into consideration the elements required for liability under the rule of section 413 of the Restatement of Torts, such as whether the

work was necessarily dangerous in the absence of special precautions. It also failed to take into consideration whether or not defendant had such control over the premises and the work as would give rise to a duty to inspect apart from the rule of section 413. The instruction was therefore erroneous.

The jury was also given a number of instructions relative to the applicability of provisions of the Labor Code imposing upon an "employer" duties concerning safety in employment and places of employment. Several of these provisions were read to the jury, including sections 6400 and 6401, which provide that every "employer" shall furnish employment and a place of employment which are safe for employees and shall do everything reasonably necessary to protect their safety, including the furnishing of safety devices and safeguards and the use of methods reasonably adequate to insure safety. A number of safety orders, issued under the Labor Code provisions, were also read to the jury. These orders required, among other things, that locations regularly used for spray painting be ventilated to remove flammable vapors, that no source of ignition be permitted where combustible materials are being applied by spraying unless adequate ventilation is maintained, and that before a source of ignition is introduced into the area tests be made to determine that the concentration of vapors does not exceed 20 per cent of "the lower explosive limit in the working atmosphere." The jury was told that defendant was an "employer" within the meaning of the Labor Code provisions and that the violation of any of the provisions or of the safety orders was presumptively an act of negligence, although the presumption could be overcome by evidence of justification or excuse.

The term "employer" as used in the safety provisions of the Labor Code is defined as including "every person having direction, management, control, or custody of any employment, place of employment, or any employee." (Lab. Code, § 6304.) An employer-employee relationship in the usual sense is not essential for application of the Labor Code. (*Porter* v. *Montgomery Ward & Co.*, 48 Cal.2d 846, 847-849 [313 P.2d 854].) For example, it has been applied where an employee of an independent contractor was injured by a dangerous condition existing when the defendant owner turned the premises over to the independent contractor (*Johnson* v. *A. Schilling & Co.*, 170 Cal.App.2d 318, 324 [339 P.2d 139]) or by the dangerous manner in which the owner operated his machinery (*Maia* v. *Security Lumber & Con-*

*crete Co.,* 160 Cal.App.2d 16, 18 et seq. [324 P.2d 657]).
■ However, an owner of premises who does nothing more with respect to the work of an independent contractor than exercise general supervision and control to bring about its satisfactory completion is not an employer within the meaning of the safety provisions of the Labor Code. It is not the responsibility of such an owner to assure compliance with all applicable safety provisions including those relating to the manner in which the independent contractor performs the operative details of the work. (*Kuntz* v. *Del E. Webb Constr. Co., ante,* pp. 100, 106 [18 Cal.Rptr. 527, 368 P.2d 127].)
■ Although the jury could find from the evidence that defendant was under a duty to exercise reasonable care to provide in some manner for the taking of precautions as required by the rule set forth in section 413 of the Restatement of Torts, the Labor Code was not the measure of defendant's responsibility. The instructions relating to the Labor Code and the safety orders were erroneous.

We are of the view that, in the light of the entire record, the errors in the instructions were prejudicial.

The order denying the motion for judgment notwithstanding the verdict is affirmed, and the judgment is reversed.

Traynor, J., Peters, J., White, J., and Dooling, J., concurred.

McCOMB, J.—I concur in the judgment of reversal, not for the reasons expressed in the majority opinion but solely for the following reasons:

The owner of property on which an independent contractor has contracted to do work is not liable for injuries received by an employee of the independent contractor unless (1) such employee was injured by some condition of the premises over which the owner remained in control; (2) the owner furnished the equipment or was obligated by contract to do so, and the equipment proved to be defective, causing injury to the employee of the independent contractor; or (3) the owner actively interfered with or arbitrarily assumed to direct the employees of the independent contractor as to the manner and method of performing the work. (*McDonald* v. *Shell Oil Co.,* 44 Cal.2d 785, 788 [3], 790 et seq. [285 P.2d 902] ; *Gonzales* v. *Robert Hiller Constr. Co.,* 179 Cal.App.2d 522, 527 [2] et seq. [3 Cal.Rptr. 832] [hearing denied by the Supreme Court] ; *Bedford* v. *Bechtel Corp.,* 172 Cal.App.2d 401, 408 [5] [342

P.2d 495] [hearing denied by the Supreme Court] ; *cf. Sabin* v. *Union Oil Co.,* 150 Cal.App.2d 606, 608 [1] [310 P.2d 685] ; 44 A.L.R. (1926) 932, 950.) Further exceptions are made where the allowance of work on the property constitutes a nuisance (*Snow* v. *Marian Realty Co.,* 212 Cal. 622, 625 [299 P. 720]) and in cases involving a nondelegable duty imposed upon a public utility (*Snyder* v. *Southern Calif. Edison Co.,* 44 Cal.2d 793, 799 [2] [285 P.2d 912]).

Applying the foregoing rule to the facts of the present case, it is clear that defendant was not liable for the death of Mr. Woolen. It is undisputed that (a) defendant's premises, including its tank in which the explosion occurred, were safe and contained no hidden danger; (b) no material or equipment of any nature whatsoever was furnished by defendant, all material and equipment being furnished by Zelinsky, an independent contractor; (c) no instructions or directions with respect to the work to be done were given by defendant, directly or indirectly; (d) this was not a situation in which the allowance of the work constituted a nuisance; and (e) there is no question of any nondelegable duty, since the factors for the application of that rule were not present.

The explosion occurred solely because of the negligence of Zelinsky, who failed to furnish a safe place for his employees to work by not adopting means to prevent the formation in the tank of an explosive combination of air and the gases exuding from the paint.

Under the facts of this case, defendant was not responsible as an employer under section 6304 of the Labor Code, defining "employer," for injuries to a contractor's employees suffered while doing the work contracted for, because the dangerous condition that caused the injury did not exist in the place of employment when defendant turned it over to the contractor. (*Gonzales* v. *Robert Hiller Constr. Co., supra,* 179 Cal.App.2d 522, 529 [5].)

Plaintiffs argue that defendant is liable under sections 413 and 416 of the Restatement of the Law of Torts (1934), which provide that under certain circumstances involving an unreasonable or peculiar risk of bodily harm to "others" unless special precautions are taken, the owner shall be liable to them for the negligence of an independent contractor. An employee of the independent contractor, however, does not come within the meaning of the word "others" as used in those sections. (*Bedford* v. *Bechtel Corp., supra,* 172 Cal. App.2d 401, 414.)

*Courtell* v. *McEachen,* 51 Cal.2d 448 [334 P.2d 870], is not applicable to the facts in the present case, since it deals with the duty of the owner of premises to third persons, not employees of an independent contractor engaged in the performance of the work. The references in the opinion to sections 413 and 416 of the Restatement were made solely to indicate that if it were found that the person who performed the negligent act which resulted in the plaintiff's injuries was an independent contractor, rather than an employee of the defendant landowner, such fact would not *in and of itself* relieve the defendant landowner from responsibility.

Schauer, J., concurred.