[Civ. No. 11836. Third Dist. May 21, 1969.]

DONALD ARTHUR DAVIS, Plaintiff and Respondent, v.
 PINE MOUNTAIN LUMBER COMPANY, Defendant
 and Appellant.

Tebbe, Correia & Kleaver, Larry Bacon, Bronson, Bronson & McKinnon and Paul J. Sanner, for Defendant and Appellant.

Jack Halpin and Newton & Newton for Plaintiff and Respondent.

BRAY, J.*—This is an appeal from a judgment in favor of plaintiff in the sum of $217,500 in an action for damages for personal injury.

### QUESTIONS PRESENTED

(a) Do the equipment exemptions provided in section 25802 of the Vehicle Code apply to the forklift?

(b) Should "safe place to work" instructions have been given?

(c) As the forklift driver was released from liability, were instructions on *respondeat superior* proper?

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

## RECORD

Defendant's driver was driving a forklift and plaintiff a "carrier" (both equipment used to haul lumber) on a public road in Siskiyou County. Both were going in the same direction. The carrier was licensed. It was passing the forklift. The forklift was being operated with the forks to the rear by a driver using one arm, who sat facing the rear. To see in the direction he was going the driver had to turn and look over his right shoulder. Had the forklift been driven with the forks forward, the driver's vision would have been obscured by the boom and cable which work the forks. The accident happened on a curve which required the forklift to turn to the right. The right rear of the carrier hit the side of the forklift. When they became disengaged, the carrier overturned, injuring plaintiff. The jury, of course, must have found that the forklift crossed to the carrier's side of the road.

Plaintiff was unable to testify, being at the time of the trial still unconscious due to injuries received in the accident. The accident occurred in clear weather on a dry, 20-foot wide, two-way road. The forklift driver testified that when struck by the carrier, his right front wheel was about 18 inches from the right side of the road and hence on his side of the road. The forklift was going at 10 to 15 miles per hour. The only other witnesses were in a pickup following behind. Its driver, whose wife works for defendant, his two teenage sons and a third teenager with them testified that the forklift was on its own side of the road at impact and as close as practicable to the right edge of the road. There were some inconsistencies as to just where along the road contact was made and as to what parts of the two vehicles came in contact. But all four agreed that impact occurred in the forklift's lane, that the two vehicles somehow got tangled and crossed back into the left lane, and that the carrier overturned when the two vehicles separated.

The highway patrolman who investigated the accident was of the opinion that the impact occurred in the forklift's lane. There were skid and gouge marks on the left side of the road. In the photographs of these marks they seem consistent with the impact having occurred on either side of the road.

The forklift was designed for use in a yard, not for travel on a highway. The forklift had no rearview mirror or windshield and no red flag attached anywhere. The accident happened as the forklift was traveling on a slight curve to the right, and plaintiff argued that the lack of mirror and wind-

shield kept defendant's driver from seeing the curve and thus caused him to cross the center of the road.

## INSTRUCTIONS

(a) Section 25802 of the Vehicle Code exemptions apply to a forklift.

That section provides that the provisions of certain sections of the Vehicle Code "shall not apply to any vehicle of a type subject to registration under this code which is not designed, used or maintained for the transportation of persons or property and which is only incidentally operated or moved over a highway. . . ."

Section 4013 of the Vehicle Code provides: "Any forklift truck which is designed primarily for loading and unloading and for stacking materials and is operated upon a highway only for the purpose of transporting products or materials across a highway in the loading, unloading or stacking process, and is in no event operated along a highway for a greater distance than one-quarter mile is exempt from registration." The parties seem to agree that because the forklift in question, in moving from one lumber yard to another, was operated on the highway two or three round trips a month between defendant's two lumber operations more than one-quarter mile apart, the exemption from registration under this section did not apply, and the forklift in question would be a "vehicle of a type subject to registration under this code" (§ 25802).

The parties also agree that a forklift "is not designed . . . for the transportation of persons or property . . . over a highway." Where they disagree is in the interpretation to be placed upon the language of section 25802 as follows: "which is only incidentally operated or moved over a highway." Plaintiff contends, and the trial court apparently held, that because of its being driven more than a quarter-mile on the highway two or three times a month, its operations on the highway is more than incidental, while defendant claims that in moving it empty from one yard to another, such use of the highway is only incidental to the main purpose of its use—to carry lumber around the yard. The latter interpretation appears to be the only logical and reasonable interpretation of the section.

The definition of "incidental" in *Kelly* v. *Hill* (1951) 104 Cal.App.2d 61, 65 [230 P.2d 864], taken from Words and Phrases, permanent edition, volume 20, page 419,

clearly shows that the use of the highway by the forklift in getting to places of use was merely incidental: " ' "Incidental" obviously means depending upon or appertaining to something else as primary; something necessary, appertaining to, or depending upon another which is termed the principal, something incidental to the main purpose. . . .' " The primary and principal use of the forklift was to load and unload lumber in a yard. Such use depended upon the forklift incidentally getting to the yard. The fact that it might be used in more than one yard did not make its use of the highway more than incidental.

 Defendant's suggestion that the question of whether the forklift's use of the highway was "incidental" should be left to the jury is not well founded. (See *Kelly* v. *Hill, supra,* p. 65, and *Fraenkel* v. *Bank of America* (1953) 40 Cal.2d 845, 848-849 [256 P.2d 569], where the court construed "incidental" within the meaning of Bus. & Prof. Code, § 7049.)

It seems absurd to hold that moving the empty forklift between yards, at most two or three times per month, is not incidental to its main use—that of moving lumber in the particular yard. Moreover, a consideration of the equipment which is exempted by section 25802 shows clearly that the Legislature considered the use of the highway for moving a vehicle like the forklift to be only incidental and never intended that such equipment need be placed on a forklift.

The court instructed that "no person shall drive upon a highway with any object or material placed in or upon the vehicle as to obstruct or restrict the driver's clear view *through the windshield* except required or permitted equipment of the vehicle and *adjustable nontransparent* sun visors which are not attached to the glass.' "[1] (Italics added.)

The court further instructed: "It is unlawful to operate any motor vehicle upon a highway when the windshield or rear window is in such a defective condition as to impair the driver's vision either in front or rear.' "[2]

Where on a forklift would a sun visor or windshield be placed? Also, why instruct the jury about a defective windshield or window when neither was on the vehicle?

The court instructed "Every motor vehicle . . . shall be equipped with a service brake system and a parking brake

[1]This is a requirement of subdivision (b), section 26708 of the Vehicle Code which is exempted by section 25802.

[2]This is a requirement of section 26710 which is exempted by section 25802.

system, each of which shall be separately applied." It then goes on to require that the two systems be so constructed that the failure of one part would not leave the vehicle without operative brakes.[3]

The court instructed "Every motor vehicle of a type subject to registration shall be equipped with a mirror so located as to reflect to the driver a view of the highway for a distance of at least 200 feet to the rear of such vehicle."[4]

The court instructed "Whenever any integral part of any vehicle projects to the rear four or more feet beyond the body of the vehicle there shall be displayed at the extreme end of the projecting part of the vehicle a red flag or cloth not less than 16 inches square."[5]

It may very well be that if any integral part of the forklift extended to the rear four or more feet beyond its body, failure to mark such extension by a flag could be considered evidence of negligence, but it was improper to make such failure negligence as a matter of law and this instruction did in applying a law not applicable.

The court instructed concerning service brakes being adequate to stop and hold the vehicle "under all conditions of loading on any grade on which it is operated" and be capable of stopping from an initial speed of 20 miles per hour in 30 feet and if the vehicle's gross weight rating was "10,000 lbs. or more or *any bus*" in 40 feet. (Italics added.) No contention was made that the accident occurred because of any failure of the forklift to stop.[6]

The court erred in instructing the jury that any of the requirements of Vehicle Code sections exempted by section 25802 were applicable to the forklift. This, of course, does not mean that the determination of whether or not the manner of the operation of the forklift on the highway was negligence was not a matter for the jury. But to instruct that the failure to have equipment prescribed by statutes which did not apply was negligence as a matter of law was error. Moreover, as shown above, even if the exemptions of section 25802 did not apply to a forklift, several of the instructions could not possi-

---

[3]This is a requirement of section 26450 which is exempted by section 25802.

[4]This is a requirement of subdivision (a), section 26709 exempted by section 25802.

[5]This is a requirement of section 24604 of the Vehicle Code exempted by section 25802.

[6]This instruction was a part of section 26454 of the Vehicle Code exempted by section 25802.

bly have been applicable as there was no evidence to support them. Thus, as the collision was with the front left wheel of the forklift, a rearview mirror would have been useless. Likewise, as there was no window, an instruction on a defective windshield was merely confusing. There was no evidence to contradict the forklift driver's testimony that he had a clear view. An instruction on a "service brake system" and a separate "parking brake system" was misleading. Moreover, there was no evidence as to what the braking system was.

■ ". . . Even though an instruction is couched in proper language it is improper, if it finds no support in the evidence, and the giving of it constitutes prejudicial error if it is calculated to mislead the jury." (*Davenport* v. *Stratton* (1944) 24 Cal.2d 232, 254 [149 P.2d 4].)

■ The fact that the instructions on the matters contained in the statutes exempted by section 25802 were given must have been considered by the jury as some indication that the court felt them relevant. Applicable here is the following from *Tannyhill* v. *Pacific Motor Transport Co.* (1964) 227 Cal.App.2d 512, 517-518 [38 Cal.Rptr. 774]: "The very giving of the instruction indicated to the jury that the court considered that Tannyhill had violated the statute. . . . The jury would then assume that in such event the negligence must have somehow contributed to the accident; otherwise the court would not have instructed on the subject."

(b) Safe place to work.

The court gave Labor Code section 6400, "Every employer shall furnish employment and a place of employment which are safe for the employee therein," and quoted from six other sections of that code dealing with the duties of an employer as to safety of his employees and that a violation of said statutes would constitute negligence. Plaintiff indicates that the propriety of the Labor Code instructions is based upon the applicability of the Vehicle Code sections hereinbefore discussed. If this were true, the court would have erred in givng the Labor Code instructions. However, if the jury were to find that irrespective of the exempted Vehicle Code sections, a forklift operated on the highway was not a safe place for an employee to work, then the Labor Code sections would be applicable. ■ It has been held that Labor Code provisions setting forth an employer's duty to provide his employees a safe place to work may extend to third parties (see *Porter* v. *Montgomery Ward & Co., Inc.* (1957) 48 Cal.2d 846, 849 [313

P.2d 854]), and here the duty was intended to protect not only the employee but third persons using the highway. However, the court's instructions seem to indicate that the question of a safe place to work depended solely upon a compliance with the Vehicle Code sections hereinbefore mentioned. ▇ Defendant raises a question as to whether the highway was a "place of employment" under Labor Code section 6400 in view of Labor Code section 6302, which defines "Place of employment" as any place "where employment is carried on, except a place the safety jurisdiction over which is vested by law in any State or Federal agency other than the division." Defendant contends that safety jurisdiction over the highways is in the California Highway Patrol administering the provisions of the Vehicle Code and hence is not a "place of employment." This section deals merely with jurisdiction to make safety regulations, as between the labor division, other state agencies, and federal agencies. It was never intended to mean that because safety regulations of other agencies than the labor division apply to an instrument supplied by an employer as a place in which to work, that instrument is not required to be safe for the employee.

▇ That the error in incorporating the Vehicle Code instructions before mentioned was prejudicial cannot be gainsaid. The jury must have been confused by them. These instructions seem to say that the forklift's failure to comply with the Vehicle Code violated the employer's duty to provide a safe place to work. Some indication of the influence of these instructions on the verdict is realized from the fact that the eyewitnesses and the highway patrolman placed the blame for the accident on the driver of the lumber carrier against which the only contrary evidence was the equivocal marks on the highway.

(c) Dismissal of action against forklift driver.

After commencement of the trial and before submission of the case to the jury, plaintiff moved to dismiss this action against DeAvilla "without prejudice against the Pine Mountain Lumber Co." The minute order shows "Counsel Jack Halpin moves to dismiss the action against Ernest Edward DeAvilla without any prejudice to Pine Mountain Lumber Company. Motion is granted." Later, the court instructed the jury that DeAvilla was defendant's agent and that defendant was liable for his negligence. Defendant contends that the dismissal was necessarily with prejudice and that it has the effect of a stipulation that DeAvilla was not negligent.

■ Where an employee is found not to have been negligent there can be no vicarious liability of his employer. (*Bradley* v. *Rosenthal* (1908) 154 Cal. 420, 425 [97 P. 875, 129 Am.St. Rep. 171]; *Davison* v. *Diamond Match Co.* (1935) 10 Cal. App.2d 218, 222 [51 P.2d 452]; *Tolley* v. *Engert* (1925) 71 Cal.App. 439 [235 P. 651].) So, if the dismissal of DeAvilla has the effect of a finding or stipulation that he was not negligent, then the agency instruction should not have been given.

■ After trial has commenced a dismissal is with prejudice unless good cause is shown for it to be without prejudice. ''Dismissals without prejudice may be had . . . after actual commencement of the trial, either by consent of all of the parties to the trial or by order of court on showing of just cause therefor.'' (Code Civ. Proc., § 581, subd. 5.)

As hereinbefore set forth, the court granted plaintiff's motion to dismiss the action against DeAvilla without prejudice against the Pine Mountain Lumber Co. ■ Under subdivision 5, section 581, *supra,* the trial court may order the dismissal to be without prejudice. This the court did. As no objection was made to that type of dismissal, nor any appeal therefrom, plaintiff's right to proceed against defendant was not impaired. Defendant cites the Arizona case of *De Graff* v. *Smith* (1945) 62 Ariz. 261 [157 P.2d 342]. There the plaintiff sued the employer and the employee-driver. Before submission of the case plaintiff dismissed the employee-driver with prejudice and then won a judgment against the employer based on the employee's negligence. A divided supreme court drew the analogy which defendant urges here and held that the dismissal with prejudice was an adjudication on the merits and a bar to any vicarious liability.

The case is not in point in that there is nothing in the decision indicating that Arizona has a statute similar to ours providing that the court may order the dismissal to be without prejudice.[7]

---

[7]After the trial and after motion for new trial had been made and without notice to plaintiff, DeAvilla obtained an ex parte judgment in his favor reciting that his dismissal was with prejudice. Since a dismissal had theretofore been ordered without prejudice pursuant to what amounts to a stipulation to that effect, the court did not have jurisdiction to enter the post trial judgment of dismissal with prejudice. Thus the later judgment entered on the ex parte motion is void and can have no effect either now or in any retrial of this action. (*Eddings* v. *White* (1964) 229 Cal. App.2d 579, 583 [40 Cal.Rptr. 453]; *Long* v. *Superior Court* (1936) 14 Cal.App.2d 753, 754 [58 P.2d 592].)

In view of the application of subdivision 5 of section 581 of the Code of Civil Procedure, it becomes unnecessary to determine whether section 877 of the Code of Civil Procedure, dealing with dismissals of actions against tortfeasors, applies to a situation where the dismissal is of an agent.

Judgment is reversed.

Pierce, P. J., and Regan, J., concurred.